UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|                                          |   |                          |
|------------------------------------------|---|--------------------------|
| ANTHONY HOLLINS,                         | : | CASE NO. 1:17-cv-965     |
| Plaintiff,                               | : |                          |
| vs.                                      | : | OPINION & ORDER          |
|                                          | : | [Resolving Docs. 18, 31] |
| CUYAHOGA COUNTY DIVISION OF              | : |                          |
| SENIOR AND ADULT SERVICES,               | : |                          |
| Defendant.                               | : |                          |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Cuyahoga County (the "County") moves for summary judgment in Plaintiff Anthony Hollins' reverse discrimination suit. Plaintiff Hollins claims that the County discriminated against him because he is a man when it promoted two female employees to social services workers positions instead of promoting him.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment.[1]

## I. BACKGROUND

**A. Social Services Worker 4 ("SSW4") Interview Process**

In January 2015, the Cuyahoga County Division of Senior and Adult Services (the "Division") posted two vacancies for SSW4 positions in the Options Unit.[2] The two vacancies were unionized positions and were, as a result, controlled by a collective bargaining agreement between the County and the American Federal of State, County, and Municipal Employees Local

---

[1] The Court also **GRANTS** the County's motion to file, instanter, supplemental affidavits. The Court will also consider Plaintiff's sur-reply, which he filed subsequent to a notice.
[2] Doc. 27-1.

1746 ("AFSCME Local 1746").[3] The Division posted the vacancy announcement twice in January 2015.[4]

Since 2010, there have been fourteen SSW4 positions in the Options Unit.[5] Two of these positions were held by men, and twelve were held by women.[6]

The requirements for the SSW4 positions were a "Bachelor's degree in social work with two (2) years of counseling experience; OR any equivalent combination of training and experience."[7]

During the two posting periods, ninety-five candidates applied for the positions.[8] Ten did not meet AFSCME Local 1746 membership criteria.[9] From the remaining eighty-five resumes, the County selected seven candidates to interview.[10] In selecting applicants for interview, the County only invited candidates whose resumes received at least 22 points out of a possible 33 points.[11] Five of the seven candidates whose resumes received at least 22 points accepted the opportunity to interview.[12]

Plaintiff Hollins was one of these five candidates.[13] At the time of his interview selection, Hollins worked as a Social Services Worker 3 ("SSW3") in the Adult Protective Services Unit.[14] Among the applicants interviewed, Hollins was the only man the County interviewed.[15] One of the candidates who declined to accept an interview was a man.[16]

---

[3] *Id.*
[4] *Id.*
[5] Doc. 16 at ¶ 1.
[6] *Id.* at ¶¶ 2-3.
[7] *Id.*
[8] Doc. 18-2 at 1.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 2-3.
[14] Doc. 21-1 at 47:5-13.
[15] *See* Doc. 18-2 at 2-3.
[16] *Id.* at 2.

Three women acted as the interview panel: Senior Options Unit supervisor, Cynthia Mason, and Options Unit supervisors, Darlene Wade and Louise Wichmann.[17]

The interview panel used a structured interview process that was approved, coordinated, and finalized by Human Resources.[18] As part of the interview process, the candidates completed a written examination and orally responded to a set of pre-approved interview panel questions about their skills, experiences, and goals.[19]

The three interviewers took notes and numerically scored each candidate's responses to the interview questions, which were worth 100 points.[20] The three interviewers also scored the written examination, which was worth fifteen points.[21] Each interviewer tallied up both scores to obtain a total score out of 115.[22] The three interviewers' final scores were then averaged to obtain the candidates' final interview score.[23] In making a recommendation, the interviewers were not allowed to look at the employees' files.[24] They did not review periodic evaluations.[25]

Mason testified that there were no exact guidelines for how the interviewers were supposed to numerically score the candidates' responses to the interview questions to obtain the score out of a possible score of 100.[26] Mason testified that the interviewers were supposed to use their "best judgment."[27] Wichmann testified that she used her "gut" to score the candidates' responses.[28]

---

[17] *Id.* at 1-2.
[18] *Id.* at 1; Doc. 18-3 at 1 ¶ 6; Doc. 18-5 at ¶ 4; Doc. 18-6 at ¶ 4.
[19] Doc. 18-2 at 1; Doc. 22-2 at 10; Doc. 18-3 at 1 ¶ 6; Doc. 18-5 at ¶ 4; Doc. 18-6 at ¶ 4. Human Resources representative, Elizabeth McClintock, sat in during all the interviews but did not score the interview responses. Doc. 22-2 at 11.
[20] Doc. 18-2 at 2; Doc. 18-3 at 1 ¶ 7; Doc. 18-5 at ¶ 5; Doc. 18-6 at ¶ 5.
[21] *See, e.g.*, Doc. 18-7 at 9; Doc. 18-3 at 1 ¶ 7; Doc. 18-5 at ¶ 5; Doc. 18-6 at ¶ 5.
[22] *See* Doc. 18-2 at 2-3; Doc. 18-3 at 9.
[23] Doc. 22-2 at 10; Doc. 18-2 at 2-3.
[24] Doc. 23-1 at 46:8-22.
[25] *Id.*
[26] *Id.* at 42:20-23.
[27] *Id.* at 42:8-14.
[28] Doc. 24-1 at 9:20-23.

Theresa McCord and Shatima Cole obtained the two highest average interview scores.[29] McCord received an average score of 96.6 and Cole received an average score of 82.7.[30] Plaintiff Hollins came in third, with an average score of 70.[31]

Mason recommended McCord and Cole for the SSW4 positions based on their interview scores and interview responses.[32] In her recommendation to the Deputy Director, Mason noted that McCord was "thorough in answering the interview questions."[33] She noted that both McCord and Cole "presented a composed and professional demeanor."[34]

The County ultimately hired McCord and Cole for the positions.[35]

**B. Candidates' Qualifications**

Hollins testified that after he discovered McCord and Cole had been hired, he sent a letter to Human Resources.[36] He testified that LaJuan Flores from Human Resources told him that the interviewers "split hairs" between him and Cole.[37]

With respect to education, McCord had a Bachelor's degree in Social Work and was a licensed Social Worker.[38] Cole had a Bachelor's degree in Psychology and had studied for two years towards a Master's degree in Social Work.[39] Plaintiff Hollins does not have a Master's degree. Hollins had a Bachelor's degree in Sociology.[40]

Question #15 of the interview questions asked the candidates whether they had a professional license, a social work degree, or a master's degree in social work or a related field.[41]

---

[29] Doc. 18-2 at 2-3.
[30] *Id.* at 3.
[31] *Id.*
[32] Doc. 18-3 at 9.
[33] *Id.*
[34] *Id.*
[35] Doc. 22-2 at 10-11.
[36] Doc. 21-1 at 113:1-114:2.
[37] *Id.* at 113:21-114:2.
[38] Doc. 22-2 at 10.
[39] *Id.*
[40] *Id.*
[41] *See, e.g.* Doc. 18-7 at 7.

Question #15 was worth ten points.[42] All three interviewers gave McCord seven points for Question #15.[43] Both Cole and Hollins received zero points for this question.[44]

With respect to work experience, the Division was looking for candidates with experience working with younger adults.[45] At the time of the promotions, providing services to younger adults was the Division's newly expanded mission.[46]

McCord had sixteen years of experience doing social work with multigenerational families at Children and Family services.[47] McCord already worked as an SSW4 in a different division.[48]

Plaintiff contends that McCord had test advantages because she had taken a similar test during an earlier application. Mason testified that McCord had applied for an SSW4 position in the Options Unit in the year or two before she took the January 2015 interview and had likely seen the same, or similar, interview questions the interviewers asked in the hiring round at issue.[49]

Cole also had sixteen years of experience as a social worker.[50] She had worked with older adults as an Adult Protective social services worker.[51]

Plaintiff Hollins had twenty-six years of relevant experience as a Social Services Worker 1 ("SSW1"), a Health and Nutrition Specialist, and a SSW3 in the Adult Protective Services Unit.[52] Hollins testified that this work entailed working with younger adults.[53] This experience was noted

---

[42] *Id.*
[43] *Id.* at 7, 16, 25.
[44] *See* Doc. 18-8 at 8, 19; Doc. 18-9 at 8, 18, 26.
[45] Doc. 18-3 at 4.
[46] *Id.*
[47] *Id.* at 9.
[48] Doc. 22-2 at 10.
[49] Doc. 23-1 at 36:2-7, 37:2-6, 46:5-7.
[50] Doc. 18-3 at 9.
[51] *Id.*
[52] Doc. 28 at ¶ 1.
[53] Doc. 21-1 at 35:11-36:21, 48:5-51:23.

in his interview responses.[54] Hollins also has an NASW Clinical Supervision Certificate.[55] Hollins testified that he did not have previous knowledge of the interview questions.[56]

**C. Hollins' Unprofessional Behavior**

Interviewer Mason testified that she had past negative experiences with Plaintiff Hollins.

In one instance between 1996 and 2000, Mason said that a social worker called her upset because Hollins had pressured her to probate a client.[57] Mason said that the social worker felt that Hollins had bullied her.[58]

Mason also testified about a time after Hollins interviewed for an SSW4 vacancy before January 2015.[59] After the interview, Mason had congratulated Hollins on his election to a Union position.[60] Hollins had apparently replied: "I'm going to get those 4's busted down to 3's."[61] Mason testified that Hollins' response was "abrasive and aggressive."[62] She believed it was "unusual" for someone to respond that way after receiving a compliment.[63]

After that incident, Mason testified that she believed Hollins was "glaring" at her at certain times and felt he was "abrasive in the workplace."[64]

Mason testified that she told Wade and Wichmann about these incidents at an unspecified time before they interviewed Hollins for the SSW4 position.[65] She testified that she tried not to

---

[54] Doc. 18-8 at 4, 15.
[55] Doc. 21-1 at 19:5-20:13.
[56] Doc. 20-1 at ¶ 3.
[57] Doc. 23-1 at 48:5-19.
[58] *Id.*
[59] *Id.* at 50:13-21, 54:20-23.
[60] *Id.*
[61] *Id.*
[62] *Id.* at 51:16-22.
[63] *Id.*
[64] *Id.* at 53:3-11.
[65] *Id.* at 49:12-17, 50:24-51:5, 53:17-54:1; Doc. 25-1 at 8:8-22, 28:19-24.

Case No. 1:17-cv-965
Gwin, J.

take into account her past dealings with Hollins when scoring his interview responses.[66] But she also testified that she "[could not] guarantee that they were not taken into account."[67]

Hollins denies that any of these incidents occurred.[68] These incidents are not recorded in Mason's recommendation to the Deputy Director, or in any of Hollins' interview responses.[69]

**E. Procedural History**

On April 23, 2015, Hollins filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC).[70] In response, the County claimed it did not promote Hollins because he was less qualified due to his education and work experience.[71] The County did not mention Hollins' unprofessionalism.[72]

Hollins received a right to sue letter, after which he filed this lawsuit.[73] In this suit, Hollins brings claims for sex discrimination under Title VII and Ohio Rev. Code 4112.02(A) and 4112.99.[74]

The County moves for summary judgment.[75] Plaintiff opposed.[76] The County filed a reply to Plaintiff's opposition.[77] Plaintiff subsequently filed a sur-reply,[78] which the County opposes.[79]

---

[66] Doc. 23-1 at 45:13-20, 49:18-22.
[67] *Id.*
[68] Doc. 28 at ¶ 2.
[69] *See* Doc. 18-3 at 9; Doc. 18-8.
[70] Doc. 22-2.
[71] *Id.* at 10-11.
[72] *See id.*
[73] Doc. 22-1 at ¶ 2.
[74] Doc. 1. On November 28, 2017, the Court granted Plaintiff's motion to substitute the County for former Defendant Cuyahoga County Division of Senior and Adult Services. Doc. 38.
[75] Doc. 18.
[76] Doc. 29. The County subsequently filed a motion for leave to file supplemental affidavits in support of its motion for summary judgment. Doc. 31. Plaintiff has represented to the Court that it does not oppose the County's motion.
[77] Doc. 33.
[78] Doc. 40.
[79] Doc. 39.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[80] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[81] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not mere allegations or denials in pleadings—showing a triable issue.[82] The non-moving party must show more than some doubt as to the material facts in order to defeat a motion for summary judgment.[83] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[84]

When parties present competing evidence-supported versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible evidence in the record directly contradicts that version.[85] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[86]

## III. ANALYSIS

Title VII prohibits employment practices that discriminate "because of [an] individual's . . . sex."[87] Ohio's discrimination statute, Ohio Rev. Code § 4112, employs the same standards as Title VII.[88] Plaintiff can prove unlawful employment discrimination with two theories: disparate treatment and disparate impact.

---

[80] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[81] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[82] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[83] *Id.* at 586.
[84] *Killion*, 761 F.3d at 580 (internal citations omitted).
[85] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[86] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).
[87] 42 U.S.C. § 2000e-2(a)(1).
[88] *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n.2 (6th Cir. 2000); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 421 N.E.2d 128, 131 (Ohio 1981).

Case No. 1:17-cv-965
Gwin, J.

The Court finds no genuine disputes of material facts regarding Plaintiff's disparate impact claim, but that some genuine factual disputes exist regarding his disparate treatment claim. The Court therefore grants in part and denies in part the County's motion for summary judgment.

**A. Disparate Treatment Claim**

The disparate treatment theory requires a plaintiff to demonstrate that "an employer has treated some people less favorably than others because of their . . . sex . . . ."[89] Proof of discriminatory motive is critical to the disparate treatment theory.[90]

The Sixth Circuit applies a modified version of the *McDonnell Douglas* framework in reverse discrimination cases, where a member of the majority sues for discrimination.[91]

First, a plaintiff must present a *prima facie* case for reverse discrimination.[92] A plaintiff can make his case with direct evidence of reverse discrimination or with circumstantial evidence.[93] When a male plaintiff complains of reverse sex discrimination in promotion, the male plaintiff establishes a circumstantial case by offering evidence of the following:

> (1) that the Defendant "is that unusual employer who discriminates against the majority;" (2) that they were qualified for the position in question; (3) that they suffered an adverse employment action when they were not promoted; and (4) that they were treated differently than other similarly situated employees.[94]

If the plaintiff makes out his *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason behind its action.[95] Once the defendant meets its burden, the plaintiff must prove that the stated explanation was a pretext for discrimination.[96]

---

[89] *Dunlap v. Tennessee Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008).
[90] *Id.*
[91] *Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523, 536 (6th Cir. 2012).
[92] *Klive v. Tennessee Valley Auth.*, 128 F.3d 337, 342-43 (6th Cir. 1997).
[93] *Id.* at 348.
[94] *Johnson*, 502 F. App'x at 536.
[95] *Id.*
[96] *Id.*

### 1. Prima Facie *Case*

Defendant argues that Plaintiff fails to make his *prima facie* case because there is no dispute of material fact regarding the first and fourth elements.[97] The Court finds there are genuine issues of material fact concerning Plaintiff's *prima facie* case.

#### a. **First Element: "Unusual Employer"**

With respect to the first element, there are genuine disputes of material fact as to whether the County is the "unusual employer" who discriminates against the majority. To demonstrate this element, Plaintiff must show "background circumstances to support the suspicion" that the County discriminates against men.[98]

Such background circumstances can exist where the defendant has a history of discrimination, where the employer's workforce is predominantly comprised of minorities, or where the person in charge of employment decisions is a minority.[99]

Here, Plaintiff has presented evidence that the interview committee in charge of making the employment decision was composed entirely of women. He also shows that since 2010, only two men, in comparison to twelve women, have held the SSW4 position. This evidence is enough to create a dispute of material fact as to the "unusual employer" element.

#### b. **Fourth Element: "Similarly Situated"**

With respect to the fourth element, Defendant argues that Plaintiff cannot show that the women who were chosen for the position over him were similarly situated to him.[100] In particular, Defendant argues that Hollins did not have the same interview score, work experience, education, or professional reputation that the other female candidates possessed.[101]

---

[97] Doc. 18 at 5-8.
[98] *Toth v. City of Toledo*, 480 F. App'x 827, 832 (6th Cir. 2012).
[99] *See id.* at 832-33.
[100] Doc. 18 at 6-8.
[101] *Id.* at 6-7.

Case No. 1:17-cv-965
Gwin, J.

Hollins, however, argues that that he may have been just as qualified, if not more qualified than, the women.[102] The all-female interview committee used subjective factors to choose the female candidates. Also, applicant McCord likely had previous exposure to the interview questions. Hollins did not. And Hollins was as qualified as, if not more qualified than, McCord and Cole.[103]

Crucial to the fourth element of Plaintiff's *prima facie* case is "the establishment of a 'similarly situated' comparator" who is not the same sex as Plaintiff.[104] A similarly situated person is one whose employment situation is nearly identical in all relevant aspects to Plaintiff's situation.[105] Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."[106]

While Defendant argues that Plaintiff received a lower interview score than McCord and Cole, the interview scores were based mostly on the interviewers' subjective considerations. The interviewers asked mostly open-ended questions about the candidates' skills, experiences, and goals.[107] Accordingly, the interviewers' scoring of subjective factors deserve "careful scrutiny."[108]

Here, the candidates' disparate interview scores are not incontrovertible proof that Hollins was less qualified than the female candidates. The interviewers admitted that there were no guidelines for numerically scoring the candidates' responses. Wichmann stated she relied on her "gut" to score the responses. Moreover, any differences in McCord and Hollins' interview scores

---

[102] Doc. 29 at 12-13.
[103] *Id.* at 13.
[104] *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 723 (N.D. Ohio 2008).
[105] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).
[106] *Id.*
[107] *See, e.g.*, Doc. 18-7 at 3 ("What unique experience or qualifications separate you from other candidates?"); *id.* at 4 ("Give us an example of an ethical dilemma you experienced and how you handled it?"); *id.* at 7 ("Where do you see yourself in 5 years?").
[108] *See Philbrick v. Holder*, 583 F. App'x 478, 485 (6th Cir. 2014).

-11-

Case No. 1:17-cv-965
Gwin, J.

could be attributed to McCord's unique prior knowledge of the interview questions. And Plaintiff Hollins put forth evidence showing the interviewers were closely deciding between him and Cole.

Hollins has also put forth evidence to suggest he was similarly situated to both McCord and Cole in the relevant aspects of the interview process. While the County argues that McCord and Cole had more relevant education,[109] the interviewers gave both Hollins and Cole zero points for relevant education in the interview process.

With respect to work experience, the County argues that unlike Hollins, job applicant McCord was already an SSW4. It also argues that McCord and Cole had sixteen years of experience,[110] including working with younger adults that was the Division's newest focus. However, Hollins has put forth evidence that he had twenty-six years of experience with the County, including social service work entailing younger adults, and was certified in working with disabled adults. This experience was noted in Hollins' interview responses.

As a result, there is a genuine factual dispute whether Hollins had similar qualifications as, if not better qualifications than, the female candidates who were promoted over him.

While the County argues that Hollins' unique unprofessionalism set him apart from the female candidates,[111] the Court finds that there are genuine disputes of fact as to whether this factor is relevant to whether Hollins was similarly situated to McCord and Cole.

Although unprofessionalism could be relevant in other circumstances,[112] the County emphasizes it had a standardized hiring procedure based on pre-approved interview questions

---

[109] Doc. 18 at 7.
[110] *Id.*
[111] *Id.* at 7-8.
[112] *See Becker v. Elmwood Local Sch. Dist.*, 519 F. App'x 339, 342 (6th Cir. 2013). *Becker* is distinguishable. There, complaints about the employee's professionalism were reported to the employer and investigated and therefore relevant to the employer's employment decision. *Id.* at 341. Here, it is unclear whether Mason reported some of these incidents with Hollins, *see* Doc. 23-1 at 51:15-19, 54:6-12, or whether the County ever investigated them, s*ee id.* at 49:1-7, 52:13-14.

-12-

Case No. 1:17-cv-965
Gwin, J.

governed by the collective bargaining agreement.[113] The interviewers were not permitted to look at the candidates' employee files and did not review performance evaluations. Mason arguably recommended McCord and Cole solely on their interview scores and responses.

Viewing these facts in a light most favorable to Plaintiff Hollins, the Court finds that a reasonable factfinder could conclude that the interviewers were limited to considering the candidates' interview responses in making their decision. Here, Plaintiff Hollins' earlier possible unprofessionalism was not recorded in his interview responses.[114] Therefore, there are genuine disputes of material fact as to whether his unprofessionalism is a relevant aspect as to whether he was similarly situated to McCord and Cole in the interview process.[115]

Accordingly, genuine issues of material fact still exist regarding Plaintiff's *prima facie* case of reverse sex discrimination.

### 2. *Legitimate, Non-Discriminatory Reason*

Because Plaintiff Hollins shows genuine disputes of material fact in his *prima facie* case, the County must show a legitimate, non-discriminatory reason for not promoting Hollins. "Courts are not intended to act as 'super personnel departments to second guess an employer's facially legitimate business decisions.'"[116]

---

[113] Doc. 18 at 8-9.
[114] Plaintiff argues that his high resume review score should have also been considered in the interview process. Doc. 29 at 13. However, according to the collective bargaining agreement, the resume review score was only relevant for determining interview eligibility, not ultimate selection. Doc 18-1 at 1 ¶¶ 3-4. Plaintiff also points to his supervisor's, Natasha Pietrocola's, high regard for him and his awards and accolades to demonstrate his qualifications. Doc. 29 at 13. Pietrocola, however, was not involved in the interview process. *See* Doc. 18-2 at 2; Doc. 22-2 at 11. Hollins' awards and accolades were not noted in his interview responses. *See* Doc. 18-8. The Court thus finds that these factors are not relevant to whether Plaintiff was similarly situated to the women in the interview process.
[115] *See B&S Transp., Inc. v. Bridgestone Americas Tire Operations, LLC*, No. 5:13-CV-2793, 2017 WL 5554769, at *3 (N.D. Ohio Nov. 17, 2017) (finding that sales to government was not relevant factor in "similarly situated" analysis since it had not been factor in allegedly discriminatory decision); *Evans v. Toys R Us, Inc.*, 221 F.3d 1334 (6th Cir. 2000) (Cole, J., concurring) ("To determine whether Evans was similarly situated, I would analyze those aspects of Evans's employment that were relevant within the context of the employment-promotion process, and not substitute rigid requirements based on identical job functions or supervisors.").
[116] *Adams v. Tennessee Dep't of Fin. & Admin.*, 179 F. App'x 266, 272 (6th Cir. 2006) (quoting *Bush v. Am. Honda Motor Co.*, 227 F. Supp. 2d 780, 797 (S.D. Ohio 2002)).

Case No. 1:17-cv-965
Gwin, J.

The County states that it did not promote Hollins because McCord and Cole were better matches and superior to Hollins.[117] The County cites to the same evidence it used to dispute Plaintiff's *prima facie* case.[118] The County supports its decision by arguing it used a "standardized hiring practice that is governed by a collective bargaining agreement."[119]

There are thus genuine disputes of material fact as to whether the County had a legitimate, non-discriminatory reason for not promoting Plaintiff.

### 3. *Pretext*

Plaintiff Hollins may show that the County's proffered reason is pretext by demonstrating that the offered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse employment action.[120]

First, Plaintiff argues that his previous unprofessional behavior did not actually motivate the County's decision. Plaintiff argues that this reason is a pretext since the County never asserted that position during the EEOC proceedings.[121] The County responds that it always had discretion to consider Hollins' professionalism in making its decision.[122]

The Court agrees with Plaintiff. The Sixth Circuit has held that "an employer's changing rationale for making an adverse employment decision can be evidence of pretext."[123]

Second, Plaintiff argues that Mason's negative opinion of Hollins based on his earlier abrasive and aggressive behavior, rather than McCord and Cole's superior qualifications,

---

[117] Doc. 18 at 9.
[118] *Id.*
[119] *Id.* at 8-9.
[120] *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012).
[121] Doc. 29 at 13, 16.
[122] Doc. 33 at 7. The County also asserts that there is no evidence that Mason's opinion of Hollins actually influenced her interview score. *Id.* at 6. Viewing the facts in the light most favorable to Plaintiff, the Court finds there is a genuine dispute of material fact on this issue. The County specifically argues that Hollins' unprofessionalism was a legitimate, nondiscriminatory reason for not promoting Hollins. *See* Doc. 18 at 9. Because Mason's testimony is the main evidence of Hollins' unprofessionalism, *see id.* at 7-8, there is some evidence suggesting her opinion influenced her decision.
[123] *Lewis v. Norfolk S. Ry. Co.*, 590 F. App'x 467, 469 (6th Cir. 2014).

-14-

Case No. 1:17-cv-965
Gwin, J.

motivated the County's decision.[124] The County argues that even if Mason had done so, consideration of Hollins' unprofessionalism was a permissible factor in the County's decision-making.[125] The County also argues that Mason's negative opinion had nothing to do with Hollins' sex, as she and Wichmann had encouraged another male to apply for the same SSW4 position.[126]

Even if Hollins' unprofessionalism was a permissible factor in other circumstances, Mason's discussion about Hollins with Wichmann and Wade improperly occurred outside of the approved standardized interview procedures touted by the County. Mason's opinion of Hollins as "abrasive and aggressive" was seemingly somewhat related to Hollins' sex. And Mason's testimony suggests that her opinion played an unwarranted role in her recommendation not to promote Hollins. Such evidence is enough to create a genuine dispute of material fact regarding the legitimate, nondiscriminatory nature of the County's reasons for not promoting Hollins.[127]

Third, Hollins argues that facts showing he was similarly qualified to, if not more qualified than, McCord and Cole show that the County's reasons were insufficient to warrant its decision.

"Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination."[128]

---

[124] Doc. 29 at 13, 17.
[125] Doc. 33 at 6-7.
[126] Doc. 31 at 2; Doc. 31-1; Doc. 31-2; Doc. 31-3.
[127] *See Bartlett v. Gates*, 421 F. App'x 485, 492 (6th Cir. 2010) (statements about Plaintiff's age, when intended to make Plaintiff retire, were sufficient circumstantial evidence to "cast doubt on the basis in fact of Defendant's proffered legitimate, non-discriminatory reasons" for Plaintiff's sex discrimination case); *Zafirau v. Cleveland Mun. Sch. Dist.*, No. 1:03 CV 169, 2009 WL 10679739, at *8 (N.D. Ohio Oct. 28, 2009) ("[I]t is true that comments 'suggesting discriminatory animus can be sufficient circumstantial evidence to establish pretext.'. . . However, these comments must be related to the discriminatory employment action.").
[128] *Bartlett*, 421 Fed. App'x. at 490–91 (citation omitted).

Case No. 1:17-cv-965
Gwin, J.

As explained above, Plaintiff has presented evidence to create a genuine dispute of fact as to whether he was as qualified as McCord and Cole. Plaintiff has also presented probative evidence of discrimination, including Mason's negative opinion of Hollins.[129]

Accordingly, there are genuine issues of material fact regarding pretext. The Court **DENIES** summary judgment on the disparate treatment claim based on Title VII and Ohio law.

**B. Disparate Impact Claim**

To the extent Plaintiff intended to bring a disparate impact claim, the Court finds no genuine dispute of material fact concerning this claim.

The disparate impact theory "requires a plaintiff to demonstrate that a facially neutral employment practice falls more harshly on one group than another and that the practice is not justified by business necessity."[130] Plaintiff need not prove discriminatory intent.[131]

The Supreme Court has devised a separate three-part burden-shifting test for disparate impact claims.[132] First, Plaintiff must make a *prima facie* case of discrimination by showing that a certain policy has caused an adverse impact.[133] The burden then shifts to the employer to show that the policy in question has a "manifest relationship to the employment," which is called the "business necessity" justification.[134] Plaintiff must then show that the tests or selection protocols could serve the employer's interest without creating the undesirable discriminatory effect.[135]

---

[129] Doc. 29 at 13. Plaintiff argues that the County reposted the SSW4 job announcement to allow McCord and Cole to apply, which shows the County treated Hollins differently than the women. *See id.* at 13, 17. The County presents evidence that the second posting only occurred because one AFSCME Local 1746 site did not originally post the listing. *See* Doc. 18-2 at 1. There does not appear to be a genuine dispute of material fact on this issue.
[130] *Id.* at 629.
[131] *Id.*
[132] *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975).
[133] *Id.*
[134] *Id.*
[135] *Id.*

-16-

To make his *prima facie* case, Plaintiff must (1) identify a specific employment practice and (2) prove, through relevant statistical analysis, that the challenged practice has an adverse impact on a protected group.[136]

To start, Plaintiff Hollins has failed to identify what specific County employment practice causes women to be hired before men are hired.[137] Plaintiff's complaint is silent on this matter,[138] and Hollins does not present any evidence concerning any such discriminatory policy.

Moreover, Plaintiff fails to prove, through any relevant statistical analysis, that the challenged practice has an adverse impact on men. Plaintiff argues that only two males, versus twelve females, have held SSW4 positions since 2010.

This figure is not probative of a discriminatory impact. This is because Plaintiff fails to also identify how many qualified males and females had applied for the SSW4 position since 2010.[139] Without such comparative data, it is impossible to know whether the County actually had a policy that adversely impacted men.[140]

There is therefore no genuine dispute of material fact regarding Plaintiff's *prima facie* case for disparate impact. Accordingly, the Court **GRANTS** summary judgment on the disparate impact claim based on Title VII and Ohio law.

---

[136] *Johnson v. U.S. Dep't of Health and Human Servs.*, 30 F.3d 45, 48 (6th Cir. 1994).
[137] Doc. 29 at 11-12.
[138] *See* Doc 1.
[139] *See Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943 (6th Cir. 1987). In his sur-reply, Plaintiff argues that the County has not provided discovery on how many males applied for an SSW4 position in *2015*. Doc. 40 at 2. Even if Plaintiff had this information, it would not be sufficient to show adverse impact. Such information would rely on a small sample based on one hiring round and would therefore be inherently suspect. *See Simpson*, 823 F.2d at 943.
[140] Plaintiff says he was in the top two to three percent for all candidates in his hiring round, since he ranked third out of ninety-five people who applied for the SSW4 positions. Doc. 29 at 12. This statistic is misleading. Plaintiff cannot fairly compare himself to the other 94 candidates. Ten of the candidates were not eligible for hire under the collective bargaining agreement and only five of the remaining eighty-five were ranked. *See* Doc. 18-2 at 1.

Case No. 1:17-cv-965
Gwin, J.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment.[141]

IT IS SO ORDERED

Dated:  December 13, 2017             *s/     James S. Gwin*
                                                                 JAMES S. GWIN
                                                                 UNITED STATES DISTRICT JUDGE

---

[141] The Court also **GRANTS** the County's motion to file, instanter, supplemental affidavits and will consider Plaintiff's filed sur-reply.